IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TENET HEALTHSYSTEM GB,
INC., d/b/a ATLANTA MEDICAL
CENTER and ATLANTA
MEDICAL CENTER SOUTH
CAMPUS, et al.,

                 Plaintiffs,

v.                                               1:15-cv-1922-WSD

CARE IMPROVEMENT PLUS
SOUTH CENTRAL INSURANCE
COMPANY,

                 Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Care Improvement Plus South Central Insurance Company's ("Defendant") Motion to Dismiss Plaintiffs' Complaint [9] ("Motion to Dismiss").

**I.    BACKGROUND**

Defendant is a Medicare Advantage ("MA") organization. MA organizations, such as Defendant, enter into contracts with the Centers for Medicare and Medicaid Services ("CMS") to provide health insurance plans to Medicare beneficiaries ("Defendant's Insureds"). (Compl. [1] ¶ 17).

Medicare-eligible individuals enroll in Defendant's health plan and, as Defendant's Insureds, receive coverage for benefits provided by traditional Medicare as well as additional benefits not provided by Medicare.  (Id.).

Under Medicare Part C, CMS pays Defendant a fixed amount each month based on the number of Medicare enrollees it covers, and Defendant must use those payments to provide for healthcare services rendered to Defendant's Insureds.  Defendant is required to pay for the care provided to its Insureds regardless of whether CMS's monthly payments adequately cover those costs.  (Id. ¶¶ 18-20).

Plaintiffs[1] are eleven (11) hospitals that provide healthcare services to Defendant's Insureds.  (Id. ¶¶ 2-12, 23).  An MA organization typically has a network of contracting providers, known as in-network providers, that are reimbursed for the services they provide to members of the MA organization's

---

[1] Tenet Healthsystem GB, Inc., d/b/a Atlanta Medical Center and Atlanta Medical Center South Campus; North Fulton Medical Center, Inc., d/b/a North Fulton Regional Hospital; Tenet Healthsystem Spalding, Inc., d/b/a Spalding Regional Medical Center; Tenet Healthsystem SGH, Inc., d/b/a Sylvan Grove Hospital; Costal Carolina Medical Center, Inc., d/b/a Coastal Carolina Hospital; East Cooper Community Hospital, Inc., d/b/a East Cooper Medical Center; Hilton Head Health System, LP, d/b/a Hilton Head Hospital; Amisub of South Carolina, Inc., d/b/a Piedmont Medical Center; Tenet Healthsystem DI, Inc., d/b/a Des Peres Hospital; Tenet Healthsystem SL, Inc., d/b/a Saint Louis University Hospital; AMISUB (SFH), Inc., d/b/a Saint Francis Hospital (collectively, "Plaintiffs").

2

health plan under the terms of their respective contracts. (Id. ¶¶ 21-23). Plaintiffs do not have written contracts with Defendant, but certain of Defendant's Insureds experienced medical conditions that required them to receive treatment at Plaintiffs' hospitals. (See id. ¶¶ 21-23).

Plaintiffs allege that, before treating Defendant's Insureds, Plaintiffs obtained authorizations from Defendant to provide the services at issue. In return, Defendant promised Plaintiffs that it would reimburse them for the services provided to Defendant's Insureds. Based upon these promises, Plaintiffs provided the required care. (Id. ¶¶ 24-26). Because of these promised payments, Plaintiffs allege they waived their right to direct payment from Defendant's Insureds to whom they provided medical services. (Id. ¶ 36).

After the Defendant's Insureds were discharged, Plaintiffs submitted bills to Defendant for the authorized services, and Defendant paid the bills in full. Several months, and sometimes years, after the payments, Defendant conducted post-payment audits and "unilaterally recouped substantial sums from the Plaintiff[s]." (Id. ¶ 34). Plaintiffs allege that they challenged Defendant's recoupment decisions, but that Defendant refused to return the payments to Plaintiffs. (Id. ¶ 35). They allege that all efforts to resolve Defendant's wrongful actions have been exhausted, excused or waived, and as a result this action was

filed. (Id.). In their Complaint, Plaintiffs allege claims for unjust enrichment and quantum meruit.[2] (Id. ¶¶ 40-56).

On July 22, 2015, Defendant filed its Motion to Dismiss. In it, Defendant argues: (1) the Court lacks subject-matter jurisdiction over Plaintiffs' claims because Plaintiffs failed to exhaust their administrative remedies; (2) the Medicare Act preempts Plaintiff's state common law claims; and (3) Plaintiffs fail to state a claim upon which relief can be granted because Plaintiffs fail to identify which laws are applicable to their claims.

## II.  DISCUSSION

### A.  Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal when the court lacks jurisdiction over the subject matter of the dispute. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

---

[2]     Plaintiffs also allege that, in conducting the post-payment audits, Defendant demanded Plaintiffs provide voluminous medical records for certain patient accounts. (Compl. ¶ 32). Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 that they are not required to comply with Defendant's demands for medical records, and that Defendant may not recoup any monies from Plaintiffs in connection with or as a result of their requests to produce medical records. (Id. ¶¶ 57-64).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be either a "facial" or "factual" attack. Morrison v. Amway Corp., 323 F.3d 920, 924-25 n.5 (11th Cir. 2003). A facial attack challenges subject matter jurisdiction on the basis of the allegations in a Complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Id.

Factual attacks challenge subject matter jurisdiction in fact. Id. When resolving a factual attack, the Court may consider extrinsic evidence, such as testimony and affidavits. Id. In a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not apply, Scarfo v. Ginsberg, 175 F.3d 957, 960-61 (11th Cir. 1999). The plaintiff has the burden to prove that jurisdiction exists. Elend v. Basham, 471 F.3d 1199, 1206 (11th Cir. 2006).

B.  Analysis

Defendant argues that the Court lacks subject-matter jurisdiction over this action because Plaintiffs failed to exhaust their administrative remedies under the Medicare Act.

The Medicare program, which provides medical insurance for the aged and disabled, is administered by CMS, a division of the U.S. Department of Health and

Human Services ("HHS").³ The Medicare Act, 42 U.S.C. §§ 1395-1395ggg, consists of three parts, labeled Parts A, B, and C, that are relevant to the discussion below. Congress established the MA program under Part C, 42 U.S.C. §§ 1395w-21 to 1395w-28. The MA program allows eligible individuals to elect to receive Medicare benefits directly from a private health plan, such as the one offered by Defendant. 42 U.S.C. §§ 1395w-21, -22. Under the MA program, instead of using the Part A traditional fee-for-service program, HHS pays MA organizations like Defendant on a monthly, or capitated, basis for each Medicare beneficiary enrolled in the plan. 42 U.S.C. §§ 1395w-21, -23 & -24. Because the MA organization receives the same payment regardless of the number of times an enrollee needs care, Medicare's financial exposure is transferred to the MA plan. 42 U.S.C. § 1395w-22(a)(2)(A). The amount of the monthly payment is based on the contract between the MA organization and CMS. 42 U.S.C. § 1395w-27.

The Medicare Act requires MA plans to cover emergency services provided by non-contracted providers, like Plaintiffs. 42 U.S.C. § 1395w-22(d)(1)(E). Payment amounts due to a non-contracted emergency provider are limited to what

---

³ The Court's summary of the Medicare statutory and regulatory framework borrows from the summary provided by the court in Doctors Med. Ctr. of Modesto, Inc. v. Kaiser Found. Health Plan, Inc., 989 F. Supp. 2d 1009, 1014 (E.D. Cal. 2013).

"the provider would collect if the beneficiary were enrolled in original Medicare." 42 C.F.R. § 422.214(a). The Medicare Act further provides that where the MA organization is made a secondary payer, as defined by 42 U.S.C. § 1395y(b)(2)(A), the MA organization may charge the primary plan. 4 2 U.S.C. § 1395w-22(a)(4); 42 C.F.R. § 422.108. An MA organization becomes a secondary payer where "payment has been made or can reasonably be expected to be made . . . under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii).

Title 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that 42 U.S.C. § 405(g) is "the sole avenue for judicial review" for claims "'arising under' the Medicare Act." Heckler v. Ringer, 466 U.S. 602, 614-15 (1984). CMS regulations provide an administrative appeal process that allows a provider that furnishes services to an enrollee to request an "organization determination," a determination "with respect to . . . [p]ayment for any . . . health services furnished by a provider other than the MA organization that the enrollee believes are covered under Medicare." 42 C.F.R. § 422.566(b)(2)(I). After the MA organization renders its organization determination regarding payment, any party to the organization determination, including "[a]ny other provider or entity (other than the MA organization) determined to have an appealable interest in the

proceeding," may seek reconsideration of the organization determination.  Id. §§ 422.574, 422.582.  After reconsideration of the organization determination, any party to the reconsideration may request a hearing before an administrative law judge ("ALJ").  Id. § 422.600.  After the ALJ renders a decision, any party to the hearing may request a review by the Medicare Appeals Council.  Id. § 422.608.  After the Medicare Appeals Council makes its final decision, a party may seek judicial review in federal court.  42 U.S.C. § 405(g); 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612(c).

The Eleventh Circuit has recognized that a lawsuit that seeks to recover on any claim "arising under" the Medicare Act must first be brought through the HHS administrative appeals process before it can be taken to federal court.  Lifestar Ambulance Serv., Inc. v. HHS, 365 F.3d 1293, 1296 (11th Cir. 2004); Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 778-79 (11th Cir. 2002).  "This nearly absolute channeling requirement serves important governmental interests in administrative efficiency and judicial economy, and assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes."  Lifestar, 365 F.3d at 1296 (internal quotation marks omitted).  Claims presented under state law may be construed as "arising under" the Medicare Act if (1) the standing and substantive basis for presentation of the claim are the Medicare Act,

or (2) a claim is inextricably intertwined with a claim for reimbursement of medical benefits.  Heckler, 466 U.S. at 623.

At the outset, the Court notes that the parties do not cite to—and the Court is unable to find—binding precedent on the issues presented by the parties.  The Court thus looks to persuasive authority in reaching its conclusion.

Plaintiffs argue that the payment decisions at issue were not "organization determinations," and therefore there are no Medicare administrative appeals processes that apply to their claims.  In support of this argument, Plaintiffs primarily rely on the Fifth Circuit's decision in RenCare, Ltd. v. Humana Health Plan of Tex., Inc., 395 F.3d 555 (5th Cir. 2004).  In RenCare, a kidney dialysis provider sued an MA organization for reimbursement of services provided to the MA organization's members under a contract between the provider and the MA organization.  Id. at 556.  The Fifth Circuit held that, because the provider's claims for breach of contract, detrimental reliance, fraud, and violations of state law were not "inextricably intertwined with a claim for Medicare benefits," those claims did not arise under the Medicare Act.  Id. at 560.  In reaching this holding, the Fifth Circuit contrasted the claims in RenCare with the claims brought in Heckler.  First, the Fifth Circuit noted that, unlike in Heckler, there were "no enrollees seeking Medicare benefits."  Id. at 558.  Next, the Fifth Circuit noted that the government

did not have any financial interest in the outcome of RenCare because it paid the insurance company a flat rate under Part C of Medicare, but it had a financial interest in Heckler because the enrollees were seeking benefits to be paid by the government itself under Parts A or B of Medicare.  Id.  The Fifth Circuit also emphasized that, under Part C:

> the [MA] organization assumes responsibility and full financial risk for providing and arranging healthcare services for [MA] beneficiaries, sometimes contracting health care providers to furnish medical services to those beneficiaries.  Such contracts between [MA] organizations and providers are subject to very few restrictions; generally, the parties may negotiate their own terms.

Id. at 559 (internal citations omitted).

Defendant argues that RenCare does not apply here, including because the parties in RenCare entered into a provider contract.  (Reply at 10-11).  Defendant argues that the Fifth Circuit in RenCare turned to the contract to resolve the dispute, but, in the absence of a contract, "the only way to determine if [Defendant] owes Plaintiffs money is to look at the Medicare regulations."  (Id. at 8, 10-11).  Defendant urges the Court to adopt the reasoning of the court in Doctors Med. Ctr. of Modesto, Inc. v. Kaiser Found. Health Plan, Inc., 989 F. Supp. 2d 1009, 1014 (E.D. Cal. 2013).

In Kaiser, the court found that, whereas the parties in RenCare were bound by a contract, "[i]n this case . . . the Hospital does not allege that it had an express

written contract . . . [and] the dispute over [the MA organization]'s payment obligation turns on the standards provided by the Medicare Act and CMS regulations for paying non-contracted emergency providers when a primary payer may be liable." Id. at 1014-15 (citing 42 U.S.C. § 1395w-22(d)(1)(E); 42 C.F.R. §§ 422.214, 422.108, and 422.566). In dismissing the plaintiff's state law claims, the court explained, "[a]lthough, as in RenCare, the government's risk has been extinguished by its monthly capitation payments to [the MA organization], the Hospital's claims for reimbursement . . . are still 'inextricably intertwined' with the Medicare Act and are subject to its exhaustion requirements." Id. at 1015 (citing Heckler, 466 U.S. at 615).

The Southern District of New York, in a case involving related legal issues, reached a conclusion similar to the one reached by the Kaiser court, which noted the importance of a contractual relationship in deciding if a dispute was within or without the Medicare Act and the CMS regulations. In New York City Health and Hosps. Corp. v. WellCare of New York, Inc., 769 F. Supp. 2d 250, 258 (S.D.N.Y. 2011), the court explained: "The RenCare court emphasized that contracts between MA Organizations and Contracted Providers are subject to very few restrictions, and that the contracting parties can generally negotiate their own terms. By contrast, the parties here had no contractual relationship and

11

reimbursement is governed by a complex federal regulatory scheme."[4] The Southern District of New York noted that CMS has "enhanced regulatory authority over matters involving Non-Contracted Providers as compared to Contracted Providers." New York City Health and Hosps. Corp. v. WellCare of New York, Inc., 801 F. Supp. 2d 126, 139 (S.D.N.Y. 2011).[5]

The Court finds the Kaiser[6] and WellCare courts' reasoning sound.  It is critical here that Plaintiffs are non-contracting providers under the MA program, because Medicare regulations provide the standards governing their relationship with Defendant, including the standards governing Plaintiffs' claims.  See Kaiser, 989 F. Supp. 2d at 1014 (finding that MA organization's payment obligation with respect to non-contracting hospitals "turns on" Medicare Act and CMS

---

[4]     The Wellcare court analyzed RenCare in the context of a motion to remand, rather than a motion to dismiss, and the issues before the court in WellCare thus were different than those presently before the Court.  The WellCare court's reasoning with respect to RenCare is, nevertheless, similar to what is required here.

[5]     In response to a payment dispute between a contracted provider and an MA organization, CMS wrote:  "the existence of provider contracts that can be enforced by the courts is why the Congress limited [CMS]'s regulatory authority in comparison to those afforded non-contracted providers." Christus Health Gulf Coast v. Aetna, Inc., 237 S.W.3d 338, 340-41 (Tex. 2007) (quoting Letter from Acting Director of the CMS Medicare Managed Care Group to Plaintiffs (Mar. 30, 2001)).

[6]     In their Response, Plaintiffs incorrectly state that the Kaiser court found that a provider's state law claims were not subject to the exhaustion requirement. (Resp. at 10 n.14).  As explained above, Kaiser stands for the exact opposite proposition.

regulations); Wellcare, 769 F. Supp. 2d at 258 (because there is no contract, "reimbursement is governed by a complex federal regulatory scheme"). Mindful that the "channeling of virtually all legal attacks through the [DHS] . . . serves important governmental interests in administrative efficiency and judicial economy," Lifestar, 365 F.3d at 1296 (internal quotation marks omitted), the Court finds that, under these circumstances, Plaintiffs' claims are inextricably intertwined with the Medicare Act, and are subject to its exhaustion requirements. See Heckler, 466 U.S. at 615; Kaiser, 989 F. Supp. 2d at 1015.

Defendant next argues that Assocs. Rehabilitation Recovery, Inc. v. Humana Med. Plan, Inc., 76 F. Supp. 3d 1388 (S.D. Fla. 2014)[7] provides an independent basis for dismissal of Plaintiffs' claims for lack of subject-matter jurisdiction. In Assocs. Rehabilitation, the court noted that the regulations in place at the time of the Fifth Circuit's RenCare decision had changed, altering the way MA organizations are paid. Id. at 1392 (citing 42 USC § 1395w-24(a)(1)(A)). The Assocs. Rehabilitation court explained:

> Under the new framework, MA organizations must now submit a bid estimating its costs for the following year. Decisions on whether payments should or should not be made affect the estimated medical expenses for the following year, which in turn affect the government's

---

[7] Plaintiffs incorrectly state that the Assocs. Rehabilitation decision is unpublished. (Resp. at 16).

> savings and the enrollee's premiums and benefits received.
> Therefore, the way in which claims for benefits are resolved will have a financial impact on the government and enrollees.

Id.  The court concluded, in light of the new framework, that a plaintiff's claims were "inextricably intertwined with a claim for reimbursement of medical benefits" where "a health care provider[] provided medical treatment to Medicare enrollees and is now seeking reimbursement for services rendered to those enrollees."  Id. at 1393.  The court found that RenCare did not apply even though the MA organization and the healthcare provider entered into a contract.  See id.

In Ohio State Chiropractic Ass'n v. Humana Health Plan, Inc., No. 5:14CV2313, 2015 WL 350391, at *3 (N.D. Ohio Jan. 26, 2015), the Northern District of Ohio agreed with the Assocs. Rehabilitation court's reasoning.  The facts of Ohio State Chiropractic are strikingly similar to the case before the Court.  There, as here, the plaintiff was a non-contracted provider to an MA organization.  Id. at *2.  Plaintiff claimed that the MA organization, Humana, attempted to recoup alleged overpayments by deducting amounts from bills later submitted by plaintiff.  Id.  Plaintiff sought a declaratory judgment, and raised claims of unjust enrichment and breach of implied contract, among other state law claims.  Plaintiff relied on RenCare to support its argument that payment disputes between an MA organization and providers are not properly construed as claims for Medicare

14

benefits, and are not subject to the exhaustion requirement.  See id.  Relying on Assocs. Rehabilitation, the court found that, under the new framework, "any resolution of whether Humana has a right to recover . . . alleged repayments will have a direct financial impact on the federal government," because a "ruling in Plaintiffs' favor will alter the estimated medical expenses for Humana moving forward, in turn affecting the government's savings and enrollees' premiums." Ohio State Chiropractic, 2015 WL 350391, at *3.  The court concluded that the plaintiff's claims "are inextricably intertwined with a claim for Medicare benefits," and "must be administratively exhausted before they are presented to a District Court for review."  Id.

Plaintiffs argue that the court's reasoning in Assocs. Rehabilitation is flawed, because "the possibility that decisions on current claims *might* affect bids in future years is beyond speculative," and contend that, with respect to their claims, "the government's risk was extinguished by its capitated payments to [Defendant]."  (Resp. at 16).  Plaintiffs note that "[n]umerous courts have continued to cite RenCare as authoritative long after the 2006 Medicare Advantage amendments.  (Id. at 17 (citing cases)).

The Court acknowledges that several district courts have applied RenCare after the 2006 MA amendments.  See, e.g., Main & Assocs., Inc. v. Blue Cross and

Blue Shield of Ala., 776 F. Supp. 2d 1270, 1280 (M.D. Ala. 2011) ("The dispute here is between a private [healthcare] provider . . . and [an MA organization]. Neither the government, nor any Medicare enrollees are parties to this action . . . [and] no government funds are at risk . . . .").[8]  In the absence of controlling authority, and after a review of the relevant legal and regulatory framework, the Court finds the reasoning in Assocs. Rehabilitation and Ohio State Chiropractic compelling and applies it in this matter.

The Court disagrees with Plaintiffs' argument that "the possibility that decisions on current claims *might* affect bids in future years is beyond speculative."  (Resp. at 16).  As the Third Circuit explained:

> If an MA plan provides CMS with a bid to cover Medicare-eligible individuals for an amount less than the benchmark amount calculated by CMS, it must use seventy-five percent of that savings to provide additional benefits to its enrollees.  42 U.S.C. § 1395w-24(b)(1)(C)(i), (b)(3)(C), (b)(4)(C).  The remaining twenty-five percent of the savings is retained by the Medicare Trust Fund.  Accordingly, when MA[ organizations] spend less on providing coverage for their enrollees, as they will if they recover efficiently from primary payers, the Medicare Trust Fund does achieve cost savings . . . [and] that savings results in additional benefits to enrollees not covered by traditional Medicare.

In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 685 F.3d 353, 364-65

---

[8]  The Court notes that the Main & Assocs. court ultimately granted plaintiff's motion to remand on the ground that plaintiff's state law claims did not provide a sufficient basis for the exercise of federal jurisdiction.  Id. at 1281.

(3d Cir. 2012). The <u>Avandia</u> court's explanation of the interests and factors at issue further supports that "a ruling in Plaintiffs' favor will alter the estimated medical expenses for [Defendant] moving forward, in turn affecting the government's savings and enrollees' premiums." <u>Ohio State Chiropractic</u>, 2015 WL 350391, at *3.[9]

For these additional reasons, the Court concludes that Plaintiffs' claims "are inextricably intertwined with a claim for Medicare benefits," and "must be administratively exhausted before they are presented to a District Court for review." <u>Id.</u>[10]

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Care Improvement Plus South Central Insurance Company's Motion to Dismiss Plaintiffs' Complaint [9] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

---

[9] Though the <u>Avandia</u> court addressed issues different than those presently before the Court, its explanation of the regulatory scheme supports the concrete effect this litigation will have on Defendant's future bids, on the Medicare Trust Fund, and on enrollees' benefits.

[10] Because the Court concludes that it lacks subject-matter jurisdiction over this action, the Court does not reach Defendant's other grounds for dismissal.

**SO ORDERED** this 11th day of February, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE